# George Temple *vs.* Hays & Hendershott.

### *Error to Desmoines.*

A statute may have effect prior to its promulgation.

A promissory note under seal, is negotiable in the same way as other notes not under seal, and the actual holder of such note, endorsed in blank, may bring his action thereon against the maker.

The statutory provision declaring that fraud may be set up against a note in the hands of an innocent assignee, does not apply to a note assigned before that statute took effect. Such defence is not available in the absence of statutes on that subject.

Where a note, made payable to " A. B. or order," is endorsed in blank, the holder may sue in his own name ; or he may sue in the name of A. B. to his own use.

But in this case, any defence available against A. B., may be set up against the holder of the note.

Temple made his sealed note, payable to Hays & Hendershott or order, the latter endorsed it in blank and suit was instituted thereon by Huntington, the holder, in the name of Hays & Hendershott, for his use.

The defendant pleaded *non est factum,* and on the trial offered to prove fraud in the inception, which was objected to, and the objection sustained by the court.

There were three errors assigned in the case.

1. That the note on which the action was brought, was permitted to go to the Jury without the execution of the same having been proved.

2. That the instrument on which the action was brought did not appear to have been endorsed to the beneficial holder, mentioned in the plaintiff's declaration.

3. That the defendant in the court below offered to prove fraud in obtaining the note originally, to which the plaintiff objected, and the objection was sustained by the court.

These assignments of error were now argued by GRIMES, for the plaintiff, and RORER & STARR, for defendants.

GRIMES, for the plaintiff, contended, that where the beneficial holder instituted a suit in the name of the original obligee, the obligor has a right to the same defence as though the bond were not endorsed. The defendant can, under the plea of *non est factum,* introduce evidence of

2

fraud in the inception of the contract, and in obtaining the bond—4 Esp. C. 9, Basten vs. Butler; 7 East. R. 479 ; Farnsworth vs. Carrard, 1 Camp. 48, Ib. 190 ; 2 Taunt. R. 2 ; 2 Str. 79; Ib. 264 ; Hatton vs. Morse, 1 Salk. 394 ; 8 T. R. 147 ; 2 B. & A. 96 ; 1 Ch. Pl. 479–80 ; Iowa Stat. p. 383, 6th sec.

By the Court, Mason, Chief Justice.—This case comes up on a bill of exceptions, and the first exception taken in that bill, to the decision of the court below, is that the note upon which the action was brought, was permitted to go to the Jury without the execution of the same having been proved.

It is admitted that we have a statute dispensing with the necessity of proving the signature in a case like this, unless the defendant, his agent or attorney, will deny the same under oath ; but it is contended that this statute was not in force at the time of the trial below. The act was approved January 4th, 1839, and by one of its provisions, it is declared that it shall take effect and be in force from and after the first day of March (then) next. The trial took place in May, more than two months subsequent.

But it is said that the law in question had not been published at the time of the trial in May, and therefore it was not in the power of the Legislature to give it force and effect. It is a settled rule, that where no time is fixed, a statute takes effect from and after its passage, (Matthews vs. Zane, 7 Wheaton 104; and the case of the Brig Ann, 1 Gallison 62.) This must, of necessity, be previous to the promulgation of the law. For a stronger reason, a Statute will take effect at the time fixed by the Legislature, where such time is not antecedent to its passage. The mode and time of publishing the law does not determine its validity, how unjust soever it may seem that men should be bound by Statutes of which they know not the existence.

The second exception taken in the trial below, was that the instrument on which the action was brought did not appear to have been endorsed to the beneficial holder mentioned in the plaintiff's declaration. There is hardly a rule of law better established, than the actual holder of a promissory note endorsed in blank, may bring his action against the maker thereof. But it seems to be supposed, that this is not to be treated in this respect as an ordinary promissory note, because it is under seal. The Statute declares "that all notes in writing made and signed by any person, or by a factor or agent of any merchant or trader, usually entrusted therewith, whereby such person, or any merchant or trader, by

such factor or agent, shall promise to pay to any other person, body po-
litic or corporate, his or their order, or unto bearer, any sum of money
therein mentioned, shall by virtue thereof, be taken and construed to be
due and payable as therein expressed, and shall have the same effect,
and be negotiable in like manner as inland bills of exchange, according
to the custom of merchants; and that the payees or endorsees of every
such note payable to them or their order, shall and may maintain their
action for such sum of money against the makers and endorsers of the
same, respectively, in like manner as, in cases of inland bills of ex-
change, and not otherwise "—(Laws of Michigan 344.) All notes in
writing, made payable to order, are here mentioned as posssessing the
attributes of negotiability. The instrument declared on in the present
case seems to fall within that predicament. The statute does not con-
fine itself to unsealed instruments. We see no good reason, therefore,
why its operation should be suspended by a mere seal attached to an
ordinary promissory note, so far at least, as regards any question in-
volved in the present case. There is another reason for coming to this
conclusion drawn from expediency. Notes of this kind are almost as
common with us as those not under seal. Very few people think
of or know the difference, and would be likely to become frequently en-
trapped were a distinction to be preserved. The Legislature, by allow-
ing the consideration of sealed instruments to be inquired into, has
obliterated one of the lines of separation. We think the Statute above
quoted was intended to erase another.

The third point contained in the bill of exceptions is, that the defen-
dant in the court below, offerred to prove fraud in obtaining the note
originally, to which the plaintiff objected, and the objection was sus-
tained by the Court. For the purpose of sustaining his exception, the
plaintiff in error has referred to the laws of Iowa, page 383, by which
it is provided that fraud may be set up against a note, even in the hands
of an innocent assignee. We do not think this statute will support his
position.

It appears that the note in question, came into the hands of the bene-
ficial holder, previous to the passage of that statute. The ordinance of
1787, (the benefits of which have been extended to us) declares that
" no law ought ever to be made or have force in the said Territory, that
shall in any manner whatever interfere with, or affect private contracts
or engagements, *bona fide* and without fraud, previously formed. "
This is similar in spirit to the provision in the Constitution of the United
States, that no State shall pass any law impairing the obligation of

contracts- Under this clause of the constitution, the rule appears to be well settled, that a State is not prohibited from changing the remedy, or the rules of evidence that shall be brought to bear upon an antecedent contract; but are only restrained from intermeddling with those contracts themselves, and with the vested rights of the parties thereto—(Fletcher vs. Peck, 6 Cranch 87; the State of New Jersey vs. Wilson, 7 Cranch 164; Sturges vs. Crowninshield, 4 Wheaton 122.) If at the time the note in question came into the hands of the present beneficial holder, the law rendered him secure against the effects of fraud in the inception of the note, can the Legislature without contravening the provision of the ordinance of 1787, above referred to, subsequently pass an enactment that shall divest him of his right. Upon obtaining possession of the note, regularly endorsed, he became, by the operation of law, a party to an implied contract with the maker of the note. A contract which, at the time it was made, was valid and binding. The Legislature cannot subsequently come in and nullify that contract, for an act which at the time the present holder obtained possession of the note, was not as against him fraudulent. We think, therefore, that the provision in the Laws of Iowa, which we have now been considering, can only apply to contracts formed subsequently to the taking effect of that statute.

Independently of that statue then, what was the law of the case? We find some authorities declaring, in a general way, that fraud renders all contracts void. After a pretty thorough examination of the question, however, we are led to the conclusion that this rule cannot operate to the prejudice of the innocent assignee—(1 Maddock's Chancery 154; 4th Petersdorff 330; Chitty on Bills 90; 3 Kent's Commentaries 51, 1st edition; and Brown vs. Mott, 7 Johnson's Reports 360)—and that as against him, fraud in the inception of the note cannot be set up.

But there is another very material feature in this case, which is that the suit was brought in the name of Hays & Hendershott, the very persons against whom the defendant offered the proof of fraud, and for the rejection of which evidence, the exception we are now considering was taken. The question here arises whether, if the beneficial plaintiff chooses to bring his action in the name of the payee, the maker cannot avail himself of any defence which would have been valid, had the payee sued for his own benefit. Where a *chose in action* is not negotiable it may still be transferred, and a suit may be brought for the use of the beneficial holder, in the name of the original payee. But in that case the defendant may resort to any defence which would have been avail-

able had there been no transfer—(Chitty on Bills 90.) The principle in the present case is nearly the same. The only direct authority which we nave been able to find on the subject is that of Hartwell vs. McBeth, 1 Harrington's Rep. 363. In that case the Superior Court of the State of Delaware decided, that on a promissory note, endorsed in blank, suit might be brought in the name of the payee, for the use of the beneficial holder, but that in such a case, want of consideration would be a valid defence. We see no reason for a contrary course, sufficient to induce us to decide in opposition to this authority. We are, therefore, of opinion that the Judge of the District Court erred in rejecting the evidence offered, as stated in the bill of exceptions, and that the judgement below should be reversed.

Judgment reversed accordingly.