MILLER, STATE REVENUE AGENT, *et al. v.* JOHNSON.*

[109 So. 716.  No. 25601½.]

(Division B.   Sept. 27, 1926.)

1. TAXATION. *Statute held not to withdraw from state revenue agent power to prosecute suits filed and pending at time of enactment thereof; but where state revenue agent collects money from*

*persons sued in favor of state, county, or levee board, agents and attorneys employed by his predecessor who had filed such suits are entitled to compensation under their contracts (Laws 1924, chapter 170; Laws 1912, chapter 101, as amended by Laws 1914, chapter 116, and Laws 1924, chapter 132; Hemingway's Code, sections 7055-7068; Laws 1924, chapter 132, section 32, as amended by Laws 1924, chapter 133).*

Chapter 170, Laws 1924, does not withdraw from the state revenue agent the power to prosecute suits filed and pending at the time of the enactment of said chapter, but leaves it subject to the results of the investigation provided for therein, and where the revenue agent collects money from persons sued upon, in favor of the state, county, or levee board, it must be held that there was merit in said suits and that they should be prosecuted, and the agents and attorneys employed by the former revenue agent in suits filed by him are entitled to their compensation under their contracts in such cases.

2. CONSTITUTIONAL LAW. *Legislature may not abate suit to recover income taxes filed by state revenue agent which was pending at time of passing statute (Laws 1924, chapters 133, 170).*

Under chapter 133, Laws of 1924, the power of the revenue agent to bring suits for income taxes due and unpaid is recognized and retained. The right to bring and prosecute suits being retained in the revenue agent, the legislature may not abate a suit pending filed by that officer. *Miller v. Hay* (Miss.), 109 So. 16,

*Corpus Juris-Cyc. References: Constitutional Law, 12CJ, p. 833, n. 79 New; Taxation, 37Cyc, p. 1199, n. 85 New; p. 1243, n. 52.

APPEAL from circuit court of Hinds county.

HON. W. H. POTTER, Judge.

Action by Thomas H. Johnson against W. J. Miller, state revenue agent, and another, to recover commissions under a contract for services as an attorney. From a judgment for plaintiff, the defendant W. J. Miller appeals. Affirmed.

*J. H. Sumrall,* for appellant.

I.   The court erred in overruling the demurrer of the defendants to the declaration of the plaintiff filed in this cause. It was earnestly contended by the defendant in

the lower court that said declaration stated no cause of action, and the reason assigned therefor was that said suit was filed by one Thomas H. Johnston, whose sole right to maintain said suit was predicated on the fact that he claimed to have been an attorney employed by the former revenue agent, and that for that reason he was in such contractual relation with the former revenue agent as would entitle him to participate in the commissions earned by the present revenue agent in the collection of taxes.

The declaration failed to state or charge that the suits alleged to have been instituted by Stokes V. Robertson, as set forth in the declaration, were ever revived in accordance with the terms of chapter 170, Laws of 1924, and had failed to charge that W. J. Miller, the existing revenue agent, had found under the discretion invested in him, that either of the said suits was just and should be maintained, or was, on motion, revived and thereafter prosecuted in the name of W. J. Miller, in accordance with the terms and provisions of said statute.

The sole right to compensation of the revenue agent, as well as any deputy or attorney or agent that he might employ, depended upon the right to retain as full compensation for services and expenses, twenty per cent of all amounts collected and paid over by said revenue agent under section 7066, Hemingway's Code.

An office is not a contract, and an officer is never regarded as having a contractual relation with the state. If the revenue agent himself, through whom any deputy, agent or attorney employed by him must derive his rights, has no contractual relation or contractual rights with the state, then, *a fortiori*, such deputy, agent or attorney could have no greater right than the officer from whom his authority or rights were derived.

The defendant claimed in the lower court, in support of his demurrer to the declaration, that the language contained in chapter 170, Laws of 1924, upon which the plaintiff relied, erroneously used the word "contracts,"

in view of the fact that said language employed in said act could in no way change the rule of law to the effect that officers occupy no contractual relation with the state and, therefore, delegate no higher authority to their subordinates or employees on behalf of the state than such officers themselves enjoy with the state. Therefore, the use of the word "contracts" in said act did not serve to nullify the rule of law and create a contract such as would be enforceable in a suit of this kind where none did exist or could exist under the law.

II. Under section 7068, Hemingway's Code, which was the law prior to the enactment of chapter 170, Laws of 1924, it was contemplated that the ex-revenue agent should prosecute any suit which he had filed prior to the expiration of his term, said suits to be revived in the name of his successor. The legislature had the right to repeal or amend this peculiar provision of the law at will. This right has been positively held to exist in *Johnson, State Revenue Agent, v. Reeves & Co.,* 112 Miss. 227.

In the exercise of its right to repeal or change this provision with reference to the compensation of the revenue agent, the legislature saw fit to place a condition upon this right for reasons best known to themselves, and provided that in certain cases, classified within a given period, this right of the ex-revenue agent should not exist unconditionally.

This change in the provisions of the law necessarily deprived the ex-revenue agent of the right which had been given to him by the legislature in the past, but which the legislature had a right to withdraw at any time it saw fit. See *Hyde v. State ex rel.,* 62 Miss. 665; *Johnson v. Reeves,* 112 Miss. 227.

After taking away the positive right of the ex-revenue agent to revive any suit which might be pending in his name, at the expiration of his term of office and substituting in lieu thereof a conditional right depending upon

the judgment of his successor in office; who was charged with the duty of representing the state in the capacity of revenue agent, the legislature, in order to preserve in the ex-revenue agent a means of compensating himself, his deputies, agents and attorneys, for such services as should prove to be valuable to the state, provided in the third paragraph of said chapter 170 that in the event the successor should find any of the existing cases meritorious and should revive same, as provided by statute, then such agreement, erroneously called "contract," as the retired revenue agent might have with his attorneys, agents and employees in and about the prosecution of such suit, should be binding on the successor.

The special pleas filed in this cause set up the fact positively that no merit was found in the pending suits which said appellee's claim is based on, and that said suits were not revived, nor was the collection made the result of, or in any way connected with, said suits filed by the ex-revenue agent in which this plaintiff had any connection or interest.

III.   The court erred in deciding as a matter of fact that the plaintiff had made out a case by a preponderance of the evidence.

In the *Reeves case, supra,* all of the suits were absolutely abated, and our court held that the legislature had the unquestioned right to so abate said suits without reference to whether or not the revenue agent was thereby deprived of an opportunity to collect any commissions therefrom to compensate him for the labor expended in compiling the data and filing the said suits.

The legislature in enacting the statute involved in the instant case did not arbitrarily exercise its positive right, which it unquestionably had, but on the other hand, dealt very fairly and reasonably with the outgoing revenue agent.

*Thomas H. Johnston, pro se.*

I. Appellants contend that the declaration shows no cause of action. The burden of their argument seems to be that the declaration fails to allege that the particular suits mentioned in the declaration were investigated by the present revenue agent and were found to be just and were revived in his name, and that this was a condition precedent to his right to commissions on the collection of taxes made by the present revenue agent for which his predecessor in office had brought suit.

In response to this argument, the court below held, and very properly so, that the allegation in the declaration that the identical taxes had been collected for which Robertson had brought suit and from the identical defendants whom he had sued, showed beyond cavil that the suits were meritorious and just and ought to have been maintained; and that in view of the fact that the several defendants had paid the taxes for which they had been sued to the present agent, no one could complain that the suits were not revived. If the defendants paid as alleged, there was no necessity for a revivor in the name of the present revenue agent; the only persons who could have demanded a revivor were the defendants, and as they paid the taxes for which they had been sued without a revivor, their right to have the same revived was waived.

And further we may add that chapter 170, Laws of 1924, does not require a "revivor" of such suits in order to bind the present revenue agent under appellee's contract with his predecessor in office. If he finds that such suits are *just and should be maintained,* the present revenue agent is bound by appellee's contract, as appears in the first proviso of said act.

Either under chapter 170, Laws of 1924, or under sec. 7068, Hemingway's Code, *assumpsit* was the proper remedy in this case. Miller, the present revenue agent, collected money which in equity and good conscience be-

longed to appellee; the law implied a promise to pay on the part of Miller. 2 R. C. L., p. 749, pars. 8 and 34.

II.   Appellants' second ground of demurrer contends that suit should have been brought against the state of Mississippi, and not against appellants. In the last analysis, the only person who could legally collect the taxes on which appellee is claiming commissions was W. J. Miller, the successor in office of Stokes V. Robertson, for both by section 7068, Hemingway's Code, and chapter 170, Laws of 1924, there is provided a revivor of the suits in his name.

This court has held that the coercive measure against defaulting taxpayers which fixes the revenue agent's rights to his commission is the bringing of a suit against such taxpayer for the taxes due and unpaid. *Garrott* v. *Robertson,* 120 Miss. 731; *Robertson* v. *Shelton,* 127 Miss. 360; *Miller* v. *Henry,* 103 So. 203; *Adams* v. *Bolivar County,* 75 Miss. 154.

Suits had been brought by the former revenue agent against all the defendants mentioned in the declaration, and the instant he brought these suits his right to the twenty per cent commission then allowed by law for the collection of such taxes vested, and he was entitled to such commissions if such taxes were ever collected, or if voluntarily paid into the proper treasury by the defendants.

When the revenue agent brings suit, he is entitled to his commissions at the rate then allowed by law. A contract arises by implication of law—his inchoate right to such commissions had vested and as a necessary consequence the right of the attorney with whom he had contracted for a part of said commissions also vested. *Fiske* v. *Police Jury of Jefferson Parish,* 116 U. S. 131, 29 L. Ed. 587, 6 Sup. Ct. Rep. 329.

The declaration charges, and properly so, that W. J. Miller, the present revenue agent, was liable to him for his commissions on the taxes so collected by him.

III. Appellant insists that these taxes were collected by an "independent investigation and proceeding" by him, his deputies, and attorneys. However, the pleas show that the identical income taxes for which the former revenue agent brought suit were collected from the identical defendants whom the former revenue agent had sued.

Chapter 170, Laws of 1924, provides in effect that if the present revenue agent finds upon investigation that *the suits are just and should be maintained,* he is bound by the contract which the former revenue agent made with the appellee as his attorney relative to those two suits; but appellee was ignored by the present revenue agent; his contract disregarded; and he was not called upon by the present revenue agent to perform any sort of service.

Appellee has no quarrel with the two cases cited by appellants; viz., *Hyde* v. *State ex rel.,* 52 Miss. 665; or *Johnston, State Revenue Agent,* v. *Reeves,* 112 Miss. 227, as they have no application to the law in this case. But he contends that under these decisions, or section 7068, Hemingway's Code, or chapter 170, Laws of 1924, on the facts and circumstances in this case he was clearly entitled to judgment and the case should be affirmed.

Argued orally by *J. H. Sumrall,* for appellants, and *Thomas H. Johnson,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellee was plaintiff in the court below and brought this suit against the state revenue agent, alleging that appellant was the duly elected and qualified state revenue agent, and that the American Surety Company was surety on his official bond; that, during 1923, and prior thereto, Stokes V. Robertson had been the duly elected, qualified, and acting state revenue agent in the state of Mississippi, and was the predecessor of appel-

lant; and that, during said time, said Stokes V. Robertson employed said Thomas H. Johnson as attorney to represent him in all suits brought by said Robertson for privilege taxes and income taxes due the state or any of its subdivisions, and agreed to pay him for his services in such suits one-fourth of the commissions allowed by law to said state revenue agent, or five per cent . of such commissions on such collections; that in 1923, after August 1st of said year, said Stokes V. Robertson, as state revenue agent, brought a number of suits in the various courts of the state to recover certain income taxes past due and unpaid to the state of Mississippi and certain privilege taxes and penalties due the Yazoo and Mississippi Delta levee district, a taxing district of said state, and among the suits so brought by said Stokes V. Robertson, state revenue agent, were certain suits named in the declaration, which said suits were filed while Stokes V. Robertson occupied the office of state revenue agent.

It is further alleged that W. J. Miller was duly elected state revenue agent to succeed Stokes V. Robertson, and that on the 21st day of January, 1924, said W. J. Miller qualified as such by taking the oath of office and making the bond required of him by law, with the American Surety Company as surety on said bond, same being conditioned as required by law for the faithful discharge of his duties as such revenue agent, a copy of said bond being made Exhibit A to the declaration, and that, since said date, said W. J. Miller in the discharge of his duties as state revenue agent, has collected certain privilege taxes and penalties past due and unpaid to the state of Mississippi and said levee district, for which said Stokes V. Robertson, as state revenue agent, had brought suit, the aggregate collections so made by said W. J. Miller being nine thousand seven hundred eighty-four dollars and seven cents, of which the plaintiff, usee, became and was entitled under his appointment and agreement to five per cent of said sum, or four hundred eighty-nine dollars and twenty cents, all of which said W. J. Miller as state rev-

enue agent then and there well knew, and he received said money for the use of the usee therein, and it then and there became and was his duty as state revenue agent to pay to said Thomas H. Johnson, the usee, said sum of four hundred eighty-nine dollars and twenty cents, but that said W. J. Miller disregarded his duty in that behalf and the rights of the plaintiff, and did not pay to the plaintiff the said sum of four hundred eighty-nine dollars and twenty cents as required by law to do.

The defendants filed a demurrer to the declaration alleging, among other things, that said declaration did not state a cause of action and was insufficient in law; second, that the declaration on its face failed to show that Johnson had no contract with defendant W. J. Miller, and sustains no contractual relationship with said defendant, and has no right to maintain this action; third, that the cause of action, if any, was either against the state of Mississippi or Stokes V. Robertson, former revenue agent, and not against defendant W. J. Miller; fourth, that the declaration shows no breach of the official bond of defendant and states no cause of action whatever against the surety, and that the declaration fails to state or charge that the suits alleged to have been instituted by Stokes V. Robertson as set forth in the declaration were ever revived in accordance with the terms and provisions of chapter 170, Laws of 1924, and fails to charge that W. J. Miller had found that either of said suits was just and should be maintained, or was, on his motion, revived and thereafter prosecuted by him in accordance with the terms of the statute known as the Abatement Act of 1924; and, sixth, that the declaration fails to charge or allege that either Stokes V. Robertson, former revenue agent, or the usee, Thomas H. Johnson, ever requested the suits mentioned in the declaration to be revived or that either of said parties notified defendant W. J. Miller of the existence of any contract between said Stokes V. Robertson, as revenue agent, and Thomas H. Johnson, as attorney, or ever requested that said contract if any

should be respected or ever gave defendant W. J. Miller, as state revenue agent, any evidence which would justify the said defendant in taking notice of any such contract in any way whatever.

The demurrer was overruled, and defendants pleaded the general issue and two special pleas. One of the special pleas alleged that that portion of the declaration claiming commissions on seven thousand five hundred dollars collected from the Alabama & Vicksburg Railway Company should not be maintained, because, when defendant W. J. Miller qualified as revenue agent and assumed the duties of his office, he found that Stokes V. Robertson, former revenue agent, during the last few days he was in office, attempted to institute various and divers suits at law and in equity in many counties of the state, and among such suits was a bill for discovery against the Alabama & Vicksburg Railway Company filed in the First Judicial district of Hinds county; that said suit, among others, was abated by chapter 170, Laws of 1924; that after said suit was abated, said W. J. Miller, as state revenue agent, employed the firm of lawyers named in said plea to assist in investigation as to the liability of all common carriers in the state of Mississippi for all past-due and unpaid income taxes imposed by chapter 101, Laws of 1912, as amended by chapter 116, Laws 1914, and as again amended by chapter 132, Laws 1924; that said attorneys accepted the employment; and that, acting under the advice of said attorneys, the said W. J. Miller, as state revenue agent, served written notices on the state tax commissioner requesting him to exercise the power conferred on him by House Bill No. 400, Laws of 1924, and particularly requesting him to serve written notice on all common carriers of the state of Mississippi, including the Alabama & Vicksburg Railway Company, against which the said Stokes V. Robertson, former revenue agent, on or about the last day he was in office, filed a blanket bill of discovery; that the tax commissioner pledged his co-operation in pursuing the reme-

dy given by said House Bill, No. 400, Laws 1924, and, on
the 8th day of July, 1924, served written notice by registered
mail on the Alabama & Vicksburg Railway Company,
directing its attention to the fact that it had not
made returns for, nor paid, state income taxes for the
years 1917, 1918, 1919, 1920, 1921, and 1922, and requiring
them to make returns within thirty days from the date of
said notice; that the said Alabama & Vicksburg Railway
Company failed and refused to make returns as required
by said registered notice, and, accordingly, said tax commissioner,
in pursuance of the request of said W. J. Miller,
state revenue agent, proceeded to assess said Alabama
& Vicksburg Railway Company for the years mentioned,
and gave written notice of said assessment to the
Alabama & Vicksburg Railway Company, and made demand
upon it to pay same; that after demand made upon
said assessment, the railway company asked for an examination
and reduction, which was granted, and the tax
commissioner agreed with said Alabama & Vicksburg
Railway Company that its total taxable net income for the
six years should be one million five hundred thousand
dollars, and that after deducting the exemptions and
lawful deductions, further agreed that said Railway
Company owed and should pay the sum of seven thousand
five hundred dollars in full settlement and satisfaction
of all claims of the state of Mississippi for income
taxes for the six years ending February 1, 1923; that
said W. J. Miller, acting upon the advice of his said attorneys,
collected this sum; and that said attorneys had
no knowledge whatever that Stokes V. Robertson had
filed a bill for discovery against the Alabama & Vicksburg
Railway Company for income taxes, and said attorneys
advised that chapter 132, Laws of 1924, provided
a statutory remedy for enforcing past-due and
unpaid state income taxes; that in having said railway
company assessed, nothing whatever was said about any
pending suit for discovery; and that the said statutory
method was followed uninfluenced by any pending bill

for discovery; and that said pending bill for discovery was not the proper method of enforcing the said collection, and was not the cause of the collections for the reasons that, first, said suit had been abated; second, said Robertson, former revenue agent, had not asked said W. J. Miller, state revenue agent, to have said bill of discovery revived or further prosecuted and furnished no facts showing merit in said proceeding; third, that the bill for discovery was not a suit based upon any assessment or for any specified sum of money, but was a fishing bill, showing on its face that said Robertson had no information as to the liability of the defendant; and, fourth, by the terms of chapter 132, Laws of 1924, the statutory method was exclusive, and said bill for discovery could not have been properly and legally conducted. It is further alleged that said W. J. Miller acted in good faith in attempting to make an original investigation as to the liability of all common carriers, that he employed special counsel at the special instance and request of the state tax commissioner, that the rights of his attorneys should be protected, and that said defendant should be permitted to exercise, in good faith, his best judgment as to the proper method or procedure, unembarrassed by any bill for discovery filed by the former state revenue agent, and that the collection made from the Alabama & Vicksburg Railway Company was made on account of the activity, original investigations, and efforts of said defendant, in conjunction with the state tax commissioner.

A like special plea was filed in the case of Merchants' Grocery Company, except in that case the defendant revenue agent employed one S. E. Birdsong to make the investigation and collect, and said Birdsong, associated with certain attorneys, collected the amount set forth from said Merchants' Grocery Company. Demurrer to this plea was sustained.

The case was then heard on an agreed statement of facts as follows:

"It is here agreed by the parties hereto, a jury having been waived, that these causes may be tried by the court without a jury, and that the testimony introduced, or evidence introduced, shall be considered as having been introduced in each of said cases. It is further agreed that Stokes V. Robertson, former state revenue agent, prior to the expiration of his term of office, and subsequent to August 1, 1923, instituted the suits set out in the three declarations in the courts of the various counties as therein recited, and, as a result of all of said suits, except that of the Merchants' Grocery Company and the Alabama & Vicksburg Railway Company, the taxes sued for were collected by W. J. Miller, state revenue agent, and the successor in office of the said Stokes V. Robertson, and that twenty per cent. commission for the fees due the state revenue agent for making such collection were deducted by him before said taxes were paid over into the proper treasury; that as to the Merchants' Grocery Company and the Alabama & Vicksburg Railway Company suits, that income taxes were collected for a portion of the period of time for which said Stokes V. Robertson had instituted suit, in the amounts set out in the declaration herein, and that, before the said W. J. Miller, state revenue agent, paid over the amount of income taxes collected, he deducted or retained therefrom twenty per cent commission thereon, paying the remainder of eighty per cent thereof to the state of Mississippi."

And the testimony of Stokes V. Robertson, former revenue agent was had. He testified to the making of a contract or agreement with Johnson and with certain deputies of his office, under which he was to give Johnson five per cent commission of the twenty per cent commission, and the deputies ten per cent for all services on such amounts as should be recovered, and that the suits set out in the declaration were filed by his direction. He further testified that he gave the defendant W. J. Miller a list of the cases, including the cases referred to in the declaration, information as to who the deputies

were in each case, the amount of commission promised to each deputy, who the attorney was in each case, and the amount promised such attorney.

W. J. Miller, state revenue agent, testified that he had a contract with a firm of attorneys of Jackson, Miss., to take the necessary steps to collect back income taxes from public service corporations, including the Alabama & Vicksburg Railway Company, and that such attorneys instituted proceedings and collected income taxes from the Alabama & Vicksburg Railway Company for the years 1918 to 1923, inclusive, and that he paid them the commissions agreed upon; also that he had a contract with S. E. Birdsong to collect back income taxes from domestic corporations, for the commission agreed upon, including the Merchants' Grocery Company, and that said Birdsong collected taxes from said company, and that he paid said Birdsong his commission for so doing, and that these collections were made without information of any pending suits filed by Stokes V. Robertson, as revenue agent, and said suits were not revived. He further testified that the taxes collected by him covered periods in the suits filed by Robertson.

The circuit court rendered a judgment for plaintiff for the amount sued for, from which this appeal is prosecuted by the revenue agent.

The statutes in force at the time the said Stokes V. Robertson filed the suits and was in office are contained in chapter 162, Hemingway's Code, sections 7055 to 7068 inclusive.

By section 7056 the revenue agent was authorized to appoint a sufficient number of deputies, and has the power, and it is his duty, to proceed by suit in the proper court against all officers, county contractors, persons, corporations, companies, and associations of persons, for all past-due and unpaid taxes of any kind whatever, for all penalties or forfeitures for all past-due obligations and indebtedness of any character whatever owing to the state, county, municipality, or levee board, and for dam-

ages growing out of the violation of any contract with the state, county, municipality, or levee board, and shall have a right of action to sue at law or in equity in all such cases where the state, county, municipality, or levee board has the right of action and may sue.

By section 7057, it is made the duty of the state revenue agent to investigate the books, accounts, and vouchers of all fiscal officers of the state, county, municipality, and levee board and to sue for and collect and pay over all money improperly withheld from either, and he has the power and right of action to sue all such officers and their sureties to collect any such moneys, etc., and he shall examine the books, accounts, and vouchers of any fiscal officer of the state, county, municipality, or levee board, and if he shall find them correct give a certificate to that effect, delivering one copy to such officer, and filing same with auditor of the state or board of mayor and aldermen.

Section 7058 prescribes additional assessments.

Section 7059 prescribes duties in case of railroads.

By section 7066, it is provided that:

"Neither the state nor any county, municipality, or levee board shall be chargeable with any fees or expenses on account of any investigation or suit made or instituted by the state revenue agent; and he shall not receive any salary; but he shall be entitled to retain, as full compensation for his services and expenses, twenty per centum of all amounts collected and paid over by him, and of the purchase-money of all lands bid in for the state by him and sold by the land commissioner."

Section 7068 provides that the state revenue agent at the expiration of his term of office shall turn over to his successor all books, papers, and documents pertaining to the office, and the successor shall allow all suits commenced, except suits for the collection of taxes on agricultural products, to be conducted in his name, but the person who commenced the suit is to pay all attorneys' fees and expenses thereof, and receive the commis-

sions, if any; and further provides that all power and authority of the state revenue agent and his predecessors in office to institute or prosecute any suit, appeal or proceeding to assess for taxation or collect taxes on agricultural products from or against the owners thereof, are, by that section, revoked and annulled.

After Stokes V. Robertson went out of office and Miller was inducted into office, the legislature enacted chapter 170, Laws of 1924, which reads as follows:

"The state revenue agent, at the expiration of his term of office, shall deliver to his successor all books, papers and documents pertaining to his office. The successor may allow all suits commenced to be conducted in his name and such suits may be revived in the name of the successor in any court in this state where the same is now pending after such successor has filed a petition or motion directed to the court where such suit is pending, requesting that such suit be revived and proceeded with in his name and that he has investigated the merits of such suit, and believes the same is just and should be maintained against the defendants named in such suit, and no suit now pending, or that may hereafter be filed shall be proceeded with or revived by any court in the name of such successor or otherwise until such petition or motion of the successor is filed in the case or suit pending. But nothing in this act shall apply to or preclude the prosecution of suits where judgments or decrees have been obtained or suits on appeal are pending in the supreme court of the state of Mississippi.

"Provided, that in all cases where the existing revenue agent shall find that any suit investigated by him under the authority of this act is just and should be maintained, the contracts made by and between the retired revenue agent and his attorneys, agents and employees in and about the prosecution of such suit shall be binding on his successor, and,

"Provided, further, that all suits abated under the requirements of this act shall be abated without preju-

dice to the rights of the state or any county or subdivision thereof, or any municipality, as the case may be.''

Section 2:

''That the expenses of all suits where the successor of the revenue agent has joined therein as above provided shall be paid by them equally, and all fees and commissions legally derived therefrom shall be shared equally between them.''

Section 3:

''But all power and authority of the state revenue agent and his predecessors in office, to institute or prosecute any suit, appeal or proceeding to assess for taxation or to collect taxes on agricultural products from or against the owners thereof, are hereby revoked or annulled, and all assessments for back taxes on agricultural products from or against the owner thereof, are hereby revoked and annulled, and all assessments for back taxes on agricultural products and all suits, appeals and proceedings of every kind to assess for back taxes, or to collect back taxes, on agricultural products heretofore begun or instituted, or now pending shall abate from and after this date, and shall be dismissed.''

Section 4:

''All suits brought by the revenue agent prior to August 1st, 1923, are hereby exempted from the operation of this act and such suits may be brought to final determination by the retired revenue agent in the name of his successor as now provided by law.''

Section 32 of chapter 132 of the Laws of 1924, reads as follows:

''Action may be brought at any time by the attorney-general of the state, any district attorney or county attorney, at the instance of the commissioner, in the name of the state to recover the amount of any taxes, penalties and interest due under this act, such action shall be brought in the county and district where the taxpayer resides. But no commissions shall be charged by such officers for such services. In case of a nonresident or

foreign corporation, action may be brought in any county where said nonresident or foreign corporation may now be sued in other cases.''

This chapter was enacted March 27, 1924, and said section 32 of chapter 132 was amended by chapter 133, p. 161, Laws of 1924, reading as follows:

''All actions to recover taxes, penalties and interest due under this act shall be brought by the attorney-general of the state, at the instance of the commissioner, in the name of the state, and such actions shall be brought in the county and district where the taxpayer resides. In case of a nonresident or foreign corporation, action may be brought in any county where such nonresident or foreign corporation may be sued as in other cases. But nothing in this act shall be deemed to preclude or prevent the state revenue agent from collecting and bringing suits for taxes due under this act in the manner heretofore designated by existing laws.''

It will be seen from these statements and the several statutes referred to that at the time Stokes V. Robertson, the former revenue agent, instituted suits against the several persons and corporations mentioned in the declaration, he had authority to contract with deputies and attorneys and to employ them to assist him in the administration of his duties of office. It will also be seen that he was charged with making investigations of all state, county, city and levee board papers and documents, vouchers and accounts, and he must do this without expense to the state, county, municipality or levee board and when he discovered any taxes to be due and unpaid or any default in any office wherever money was withheld from the state, he was and is charged with the duty to sue for and recover it, and from such moneys as shall be recovered by him he was to retain as his compensation a certain per centum and pay the expenses of his office. In the cases of *Adams* v. *Bolivar County,* 75 Miss. 154, 21 So. 608, *Garrett* v. *Robertson,* 120 Miss. 731, 83 So. 177, *Robertson* v. *Shelton,* 127 Miss. 360, 90 So. 83,

and *Miller* v. *Henry,* 139 Miss. 651, 103 So. 203, it was held that when the revenue agent institutes suits he becomes entitled to his commission of what, if any, recovery he had as a result of such suit, regardless of whether he himself collected the money or not, if the money was collected as a result of such suit.

By the statutes above referred to, it will also be seen that the law was, at the time the suits instituted mentioned in the declaration in those cases, that the revenue agent had the right to proceed in the name of his successor with such suits as he had instituted and to prosecute them to final judgment.

By chapter 170, Laws of 1924, above set out, the legislature provided that:

The successor may allow all suits commenced to be conducted in his name, and such suits may be revived in the name of such successor in any court in this state where same is pending, "after such successor has filed a petition or motion directed to the court where such suit is pending, requesting that such suit be revived and proceeded with in his name and that he has investigated the merits of such suit, and believes the same is just and should be maintained against the defendants named in such suit, and no suit now pending, or that may hereafter be filed shall be proceeded with or revived by any court . . . until such petition or motion . . . is filed."

Under this statute it was the duty of the revenue agent to investigate each pending suit filed by his predecessor to determine the facts and probabilities of recovering from the defendants the matters demanded of them. It is further provided in this action that where the existing revenue agent shall find any suit investigated by him under the authority of this act is just and should be maintained, the contracts made by and between the retired revenue agent and his attorneys, agents, and employees, in and about the prosecution of such suit, shall be binding on his successor.

In the cases here involved, it must be assumed that a proper investigation under the statute would have disclosed that the case was just and should be revived, because the revenue agent did find the amounts collected by him to be due and owing, and this liability was made manifest and the moneys collected. Although he did not formally revive the suits filed by his predecessor, yet we must treat the matter as though the suits had been revived. The statute cannot be construed to give the incumbent revenue agent absolute discretion as to whether he will revive the suits or not. He must act upon the facts, and must perform the duty enjoined by law, and he necessarily would have found, whether he did find or not by any report, that there was merit, because all of his investigations and activities resulted in the collection of the very kind of obligations against the very persons sued by the former revenue agent. When he found these persons owed moneys which he afterwards collected, it was his duty to recognize contracts of attorneys and agents of the former revenue agent, and to permit plaintiff to continue in such employment as recognized by the legislature. In other words, it was not the legislative purpose to deprive the attorneys, agents, and employees of the former revenue agent of the benefits of their contracts and employment in cases where the parties sued are investigated and found to owe the state, county, municipality, or levee board, and collected through demand made of them in suits filed by the former revenue agent.

In other words, when the revenue agent found that the party sued owed the state the demand sued for, and that said party should be made to discharge his obligation to the state, the revenue agent was under duty to respect these contracts and use these agents, and he cannot avoid liability by ignoring the statute imposing the duty upon him.

Construing the statute referred to with reference to pending suits, it seems to us that, in the light of Miller v.

*Hay* (Miss.), 109 So. 16, the legislature was without power to abate pending suits filed by the former state revenue agent. The revenue agent must make an investigation and report to the court where the action is pending the result of his investigation. The court said in that case:

"The power vested in the legislature by these sections of the Constitution, and the only power which it can exercise, is the legislative power, so that the question for decision is simply this, Is the power which the legislature sought to exercise by the enactment of the statute here in question legislative? Whether or not a suit in equity or an action at law shall abate, that is, whether all proceedings therein shall be suspended, unless and until the cause for the suspension be removed, as well as whether a suit or action that has been abated shall be revived, are judicial questions to be determined by the court in which the suit or action is pending, and are so universally held to be such that it would be supererogatory to cite authority therefor. The declaration in this statute that the suit therein referred to 'be and the same is hereby abated,' and the permission therein given the board of supervisors to revive it are an attempt on the part of the legislature to interfere in a pending judicial controversy by the exercise of a power which the Constitution vests solely in the courts."

It will be seen from chapter 133, Laws of 1924, that it was not the legislative purpose to take from the revenue agent the power to collect taxes and bring suits for the collection thereof, under this act, in the manner designated by the existing laws, and the power of the revenue agent, under chapter 133, Laws of 1924, to prosecute an action to final judgment is unimpaired if, in the opinion of the revenue agent, he should proceed with such suit—that is to say, if the facts which he finds justify the court in believing that there is an obligation upon which the suit is predicated, and that there is a probability of recovery.

In the case before me, the legislature has not under-taken to remove the power existing in the revenue agent to prosecute suits of the character involved here, and it is clearly different from the case of *Miller* v. *Globe-Rut-gers Fire Ins. 'Co.* (Miss.), 108 So. 180; *Johnson* v. *Reeves,* 112 Miss. 227, 72 So. 925, in which cases the pow-er of the revenue agent to bring particular suits was tak-en from him by statute.

We think, therefore, that the court below was correct in its holding, and, in view of this conclusion, it is unnec-essary to decide, in this case, what effect, if any, the change in the statute would have had upon the rights of the plaintiff had no collection been made, or what effect the decision of *Fisk* v. *Jefferson Police Jury,* 116 U. S. 131, 6 S. Ct. 329, 29 L. Ed. 587, and other cases decided by the federal supreme court, bearing on the right of a person having a vested interest to have the remedy re-main unimpaired, would have in such case.

The judgment of the court below therefore is affirmed.

*Affirmed.*